# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 14-CR-10018-EFM

JAMES D. RUSSIAN,

    *Defendant.*

## MEMORANDUM AND ORDER

Presently before the Court is the Government's Motion to Revoke the Magistrate's Order of Release, filed February 25, 2014. On March 5, 2014, the Court held a hearing on the motion. For the following reasons, the Government's motion is granted.

### I.     Factual and Procedural Background

On February 13, 2014, a federal grand jury charged Defendant James D. Russian ("Defendant") with being a felon knowingly in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Following a lengthy detention hearing with Magistrate Judge Kenneth G. Gale, Plaintiff was ordered released, despite the Government's objections, on $10,000 cash bond and certain conditions pending trial.

After Judge Gale made his ruling, the Government indicated its intention to appeal his decision and moved for a stay of Defendant's release pursuant to D. Kan. R. 72.1.4. Judge Gale

granted the Government's motion and ordered that the release order be stayed until 9:00 a.m. on February 26, 2014. The Government timely filed its appeal on February 25, 2014.

On this same date, the Government filed a Complaint against Defendant, charging him with one count of knowingly possessing a firearm in furtherance of a drug trafficking crime, namely possession with the intent to distribute a controlled substance, in violation of 18 U.S.C. § 924(c)(1)(A), and one count of possession with the intent to distribute more than 9.36 grams of marijuana, a controlled substance, in violation of 21 U.S.C. § 841(a)(1).[1] At that time, the Government moved for detention on the grounds that the Complaint charged offenses for which a minimum term of imprisonment is prescribed, which therefore creates a rebuttable presumption of detention, and that Defendant posed a risk of flight and danger to the community. Following a detention hearing on February 26, 2014, Judge Gale ordered Defendant committed to the custody of the Attorney General or his designated representative.

On March 4, 2014, a second federal grand jury indicted Defendant on the following charges: (1) one count of being a felon knowingly in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) one count of being a felon knowingly in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1); (3) knowingly possessing a firearm in furtherance of a drug trafficking crime, namely possession with the intent to distribute a controlled substance, in violation of 18 U.S.C. § 924(c)(1)(A); and (4) knowingly and intentionally possessing, with the intent to distribute, marijuana, a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

---

[1] The Court notes that this original Complaint contained the wrong date, alleging that Defendant committed the named crimes on November 27, 2014, rather than on November 27, 2013. The Government filed a Superseding Criminal Complaint two days later, on February 27, 2014, correcting the error.

In the hearing for its Motion to Revoke on the original indictment, the Government again moved for detention on the grounds that the charges contained in the superseding indictment involve offenses for which a minimum term of imprisonment is prescribed, and which therefore creates a rebuttable presumption of detention, and that Defendant poses a serious risk of flight and danger to the community.

## II.     Legal Standard

The district court's authority to review a magistrate's detention order derives from 18 U.S.C § 3145(b) and is *de novo*.[2] However, the court need not conduct a *de novo* evidentiary hearing.[3] The district court, in its discretion, may either start from scratch or "incorporate the record of the proceedings conducted by the magistrate judge."[4] Regardless of which way it elects to proceed, the district court must decide "both the facts and propriety of detention anew without deference to the magistrate judge's finding."[5]

## III.     Standards for Detention

Under the Bail Reform Act of 1984, the Court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."[6] "The government has the burden to show that no condition or combination of conditions would reasonably assure the accused's presence in later proceedings and/or the safety

---

[2] *See United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

[3] *See United States v. Lutz*, 207 F.Supp.2d 1247, 1251 (D. Kan. June 4, 2002).

[4] *United States v. Plakio*, 2001 U.S. Dist. LEXIS 17262, *1 (D. Kan. Sept. 5, 2001).

[5] *United States v. Poole*, 2004 U.S. Dist. LEXIS 14928, *1 (D. Kan. July 15, 2004) (*citing Lutz*, 207 F.Supp.2d at 1251).

[6] 18 U.S.C. § 3142(e).

of other persons and the community."⁷ Because risk of flight and danger to the community are "distinct statutory sources of authority to detain," the government need only prove one or the other in order to have the defendant detained."⁸

In determining whether the government has met its burden, the court considers the following four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.⁹

The Bail Reform Act also provides a rebuttable presumption of risk of flight or danger to the community when a defendant is charged with an offense under 18 U.S.C. § 924(c). "A grand jury indictment provides the probable cause required by the statute to trigger the presumption."¹⁰

---

⁷ *United States v. Dozal*, 2009 U.S. Dist. LEXIS 33639, *2 (D. Kan. Mar. 27, 2009).

⁸ *United States v. Padilla*, 2009 U.S. Dist. LEXIS, *3 (D. Kan. Dec. 3, 2009) (*quoting United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985).

⁹ 18 U.S.C. § 3142(g).

¹⁰ 18 U.S.C. § 3142(e)(3)(A).

Here, the superseding indictment charges Defendant with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and thus raises the rebuttable presumptions of risk of flight and danger to the community.

"Once the presumption is invoked, the burden of production shifts to the defendant."[11] While "[t]he defendant's burden of production is not heavy,"[12] he must, at a minimum, "come forward with some credible evidence of something specific about his charged criminal conduct or about his individual circumstances that tends to show that 'what is true in general is not true in the particular case.'"[13] Because the presumption is not a bursting bubble presumption, "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain."[14] Of course, "at all times, the burden of proof remains with the government to show there is no condition or combination of conditions that would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community."[15] The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence.[16]

---

[11] *United States v. Carr*, 2007 U.S. Dist. LEXIS 56149, *5 (D. Kan. July 31, 2007) (*quoting United States v. Walters,* 89 F.Supp.2d 1217, 1220 (D. Kan. 2000)).

[12] *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991).

[13] *United States v. Frater*, 2009 U.S. Dist. LEXIS 101393, *3 (D. Kan. Nov. 2, 2009) (*quoting United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

[14] *Stricklin*, 932 F.2d at 1355. Some courts have stated that the defendant rebuts the presumption when he meets his burden of production. As pointed out by the Seventh Circuit, "[u]se of that word in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release." *Dominguez*, 783 F.2d at 707. In order to avoid confusion, the Court will refrain from stating that Defendant has rebutted the presumption if he meets his burden.

[15] *Lutz*, 207 F.Supp.2d at 1251.

[16] *Cisneros*, 328 F.3d at 616.

Here, defense counsel called to the Court's attention Defendant's prompt reporting for service of earlier prison sentences and his consistent court appearances on previous charges. Additionally, counsel noted that Defendant is currently out on $10,000 bond for charges brought against him in Crawford County. If granted bond in the case now before this Court, Defendant would have $20,000 worth of incentive to remain in the jurisdiction. The Court also takes note of Defendant's strong family ties to the community, including his parents and sister who reside in Pittsburg, Kansas, where Defendant is expected to return. The Court finds this evidence to be sufficient to shoulder Defendant's light burden.

### IV.    Analysis

**A.  The Nature and Circumstances of the Offense**

The superseding indictment in this case charges Defendant with, *inter alia*, knowingly possessing a firearm in furtherance of a drug trafficking crime, namely, possession with the intent to distribute a controlled substance. The seriousness of this offense is reflected in the applicable penalty. If convicted, Defendant faces a minimum of five years in prison to run *consecutive* to any sentence issued for the drug trafficking offenses themselves. Therefore, the Court finds that factor one favors detention.[17]

---

[17] *See Frater*, 2009 U.S. Dist. LEXIS 101393 at *4 (finding that factor one favored detention because the defendant was charged with a serious drug trafficking offense, conspiracy to distribute a large amount of cocaine); *United States v. Wesley*, 2009 U.S. Dist. LEXIS 29781, *5 (D. Kan. Apr. 8, 2009) (holding that serious crimes involving both drugs and firearms favor detention); *United States v. Romo-Sanchez*, 170 F.Supp.2d 1127, 1129 (D. Kan. 2001) (stating that "serious crimes involving drugs . . . favor detention"). The reason that the fact that the defendant is charged with a serious drug trafficking offense favors detention is simple: serious drug trafficking offenses carry severe penalties, penalties that provide a defendant "with a great incentive to flee." *United States v. Nichols*, 897 F.Supp. 542, 547 (W.D. Okla. 1995).

**B. Weight of the Evidence**

Based on the February 25, 2014, Complaint, the facts of this case are as follows. On November 13, 2013, the Barton County, Missouri Sheriff's Department received a 911 call from Torre Presley ("Presley") requesting help with a man, later identified as Defendant, who was threatening her with a machete and a handgun. When officers responded to the scene, Defendant gave chase. The officers activated emergency overhead lights in an effort to initiate a traffic stop, but Defendant failed to yield or stop his vehicle. The chase crossed the state line into Kansas where Crawford County deputies joined the pursuit. Vehicle speeds exceeded 100 miles per hour. Defendant eventually lost control of his vehicle and fled on foot. He was subsequently taken into custody.

A search of Defendant's vehicle revealed loose marijuana in the driver's door, nine individual baggies containing marijuana, a broken glass pipe with residue, a small cooler containing alcoholic beverages, a Samsung cellular telephone, and United States currency. Based on this discovery, Crawford County Sheriff's deputies obtained a search warrant for Defendant's home, where they discovered the following: multiple plastic baggies containing a leafy green substance, rolling papers, matches, multiple plastic baggies containing a white powdery substance, two glass bottles containing a liquid crystalline substance which field-tested positive for methamphetamine, two digital scales, narcotics pipes, unopened Fentanyl packages, and a notebook containing names, amounts, and telephone numbers. In addition to the drugs and paraphernalia, officers found a Ruger nine-millimeter semi-automatic pistol loaded with twelve live ammunition cartridges, as well as an additional seventy (70) nine-millimeter ammunition cartridges and eighteen (18) live twenty-gauge shotgun ammunition cartridges. Based on this

evidence alone, it appears to the Court that the Government's case against Defendant is strong. As a result, the Court finds that factor two also favors detention.[18]

**C. Defendant's History and Characteristics**

As reflected in the pretrial services report, Defendant suffers from depression, for which he takes prescription medication. Although not on probation, parole, or any other type of release at the time of his arrest, Defendant has a lengthy criminal history, including convictions for possession of cocaine, reckless driving, conspiracy to commit aggravated battery, unlawful acquisition, receipt, and possession of firearms, manufacture/distribution of opiates, obstructing legal process, assault, and theft. Defendant has faced numerous additional charges, some of the most serious of which include possession of a hallucinogenic, resisting felony arrest, fleeing/eluding a law enforcement officer with five or more moving violations, and criminal use of weapons.

It also appears that Defendant has some difficulty maintaining employment. Although Defendant claims to have been self-employed in the concrete industry for the past ten years, the Court notes that his work is, as counsel admitted on the record, seasonal in nature. Defendant informed the Pretrial Services Officer that he has not worked in recent months and is now living off of his savings.

Finally, there is some evidence in the record that Defendant has previously proclaimed himself to be a sovereign citizen, immune to the jurisdiction and rules of this Court. The pretrial services report contains information that Defendant reported to agents from the Bureau of Alcohol, Tobacco, and Firearms that he is trying to surrender his United States citizenship.

---

[18] *See United States v. Yu*, 2008 U.S. Dist. LEXIS 46363, *4 (D. Kan. June 12, 2008) (holding that because there is substantial evidence of the defendant's guilt, factor two favors detention).

While defense counsel assured this Court that Defendant has now indeed agreed to abide by any constraints set upon him, Defendant's former statements are worthy of consideration.

In contrast, Defendant has lived nearly all his life in Pittsburg, Kansas. His family, consisting of his parents and sister, still reside in the area. Defendant has lived in the same apartment for the past four years and has indicated his intent to return to this apartment upon his release. During an interview, Defendant's sister expressed her fear that Defendant currently has a drug and/or alcohol problem for which he may need treatment.

Based on the circumstances set forth above, the Court finds that the third factor favors detention.

**D. Nature and Seriousness of the Danger to Any Person or the Community**

"Before releasing defendant on any set of conditions, the Court must be satisfied that defendant will not pose a danger to any other person or to the community."[19] "The distribution of illegal narcotics constitute a serious and pervasive danger to the community."[20] As a result, "the high risk that defendant will commit additional drug trafficking crimes is sufficient to detain defendant."[21]

First and foremost, the Court acknowledges the danger and seriousness of Defendant's activities the night of his arrest in November 2013: possession of a firearm, flight from law enforcement, and a high-speed chase. In addition, the Government brought to the Court's attention a series of text messages between Defendant and someone by the name of "Ang," later identified in police reports as Angela Lowries ("Lowries"), in which Defendant appears to

---

[19] *United States v. Underwood*, 2000 U.S. Dist. LEXIS 4169, *4 (D. Kan. Feb. 15, 2000).

[20] *United States v. Cox*, 635 F.Supp. 1047, 1055 (D. Kan. Mar. 1, 1986).

[21] *Underwood*, 2000 U.S. Dist. LEXIS 4169 at *4.

threaten Lowries for the return of his gun and "eight-ball." One message suggests that, without the return of these items, Lowries would "see fire." It also appears Defendant threatened to cut the heads off of Lowries' animals and to have someone by the name of Casey "pull the plug." At one point, Lowries questions Defendant, "Stop please. Are you going to hurt me?" While defense counsel attempted to show that there was a long history between Defendant and Lowries, the Court is not convinced that such a history mitigates Defendant's clear threats.

The Government also set forth evidence of a Final Order of Protection from Stalking against Defendant, issued on December 18, 2013, in Crawford County. Defendant was arrested on January 27, 2014, for violating this order and was booked into the Crawford County Jail on $10,000 bond. As such, the Court concludes that factor four favors detainment.

**E. Conclusion**

For the foregoing reasons, the Court finds that the Government has carried its burden of proving that pretrial detention is warranted. No set of conditions of release will assure Defendant's pretrial presence as required and/or protect the community from the danger of additional drug trafficking crimes.

**IT IS ACCORDINGLY ORDERED** this 12th day of March, 2014, that the Government's Motion to Revoke the Magistrate's Order of Release (Doc. 10) is hereby **GRANTED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE