IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

JAMES D. RUSSIAN,

    *Defendant.*

Case No. 14-10018-01-EFM

## MEMORANDUM AND ORDER

Before the Court are four motions to suppress filed by Defendant James D. Russian. The first motion—Motion to Suppress Automobile Search (Doc. 37)—asks the Court to suppress all evidence obtained from the warrantless search of Russian's vehicle after he was arrested on November 27, 2013. The second and fourth motions—the Motion and Amended Motion to Suppress Cellular Telephone Search (Docs. 38 and 44)—seek suppression of text messages and other data found during a search of Russian's cellular telephones. And the third motion—Motion to Suppress Residential Search (Doc. 39)—seeks suppression of a firearm, ammunition, drugs, drug paraphernalia, and other evidence found during a search of Russian's residence. For the reasons discussed below, the Court denies Russian's Motion to Suppress Automobile Search, Motion to Suppress Residential Search, and Amended Motion to Suppress Cellular Telephone

Search. Additionally, the Court denies as moot Russian's original Motion to Suppress Cellular Telephone Search.

## I.     Factual and Procedural Background[1]

On the night of November 27, 2013, Officer Chris Wilson received a report of a police pursuit in which the suspect, Defendant Russian, was driving from Barton County, Missouri, to Crawford County, Kansas. Russian allegedly had threatened another individual and possessed a handgun. Officer Wilson entered the pursuit about a mile west of the state line on U160 Highway. He followed the pursuit approximately four and half miles before coming upon Russian's car sitting on the side of the road facing oncoming traffic. Three of the car's wheels were off the road. The car's location and direction indicated that it had spun out of control. The car's headlights were on and the driver's door was open. A Barton County deputy informed Officer Wilson that he saw Russian exit the vehicle and run to a nearby wooded area, approximately 500 feet away.

Russian remained in the wooded area for about twenty to thirty minutes until law enforcement officers apprehended him and brought him back to the car. Officer Wilson took custody of Russian and searched him, finding a red and black cell phone, nineteen $10 bills, and one $20 bill on his person. Russian was then arrested and removed from the scene. Officer Wilson then searched Russian's vehicle in attempt to locate the handgun used in the reported assault. Inside the vehicle, Officer Wilson found, in part, a ball of green leafy substance in the driver's door panel that he believed to be marijuana, one $1 bill, one $5 bill, one $10 bill, a black cell phone, a small black bag that contained nine plastic baggies each holding a small amount of

---

[1] The facts are taken from testimony and exhibits admitted at the hearing conducted April 10, 2015.

a green leafy substance, one half of a match book, rolling papers, and a broken glass smoking pipe with white residue. After searching Russian's vehicle, Officer Wilson returned to the Crawford County Sheriff's Department. He spoke with Barton County Deputy Jordan Justus, who informed him that the victim of the alleged assault reported that Russian kept drug-related items under his bed and that he stored drugs in his bathroom vanity.

On November 28, 2013, Officer Wilson filed an application for a search warrant. The application sought permission to search the red and black Samsung cell phone found on Russian's person, the black Samsung cell phone found in Russian's vehicle, and the residence of "503 E. Kansas Apt. #2, Pittsburg, Kansas," which was occupied by Russian.[2] With regard to the cell phones, Officer Wilson stated that he would search "text messages, phone numbers, phone calls sent and received, any data contained within the phone or on any removable media device within the phone and Images contributing to the possession or sale of any illegal drug and drug paraphernalia."[3] The search warrant was signed by a Crawford County District Judge on November 28, 2013, at 8:15 a.m.

After obtaining the signed search warrant, Officer Wilson and other law enforcement officers searched Russian's residence.[4] The search revealed, in part: a handgun, plastic baggies similar to those found in Russian's car that contained a green leafy substance, an excess of $23,700 in cash, and three additional cell phones. The search of the two cell phones referenced in the warrant—the red and black Samsung phone found on Russian's person and the black

---

[2] State Court Search Warrant Application, Doc. 61-1, p. 1.

[3] *Id.*

[4] An affidavit prepared by Officer Wilson after the search stated that Officer Wilson and the other officers involved began searching the residence at 7:53 a.m.

Samsung phone found in Russian's vehicle—revealed text messages, phone numbers, a phone log showing calls sent and received, and images.

The Crawford County Sheriff's Department subsequently contacted Special ATF Agent Neal Tierney to request his assistance in investigating Russian's alleged criminal activities. On February 18, 2014, Tierney arrested Russian pursuant to an arrest warrant issued by this Court and seized two cellular telephones found on his person during the arrest. On February 27, 2014, Special Agent Tierney submitted an affidavit and application for a search warrant of the two cell phones. The application requested permission to seize (1) call logs; (2) "any stored, incoming and outgoing electronic communications, to include text messages (SMS), electronic mail messages, and peer to peer messages (PIN);" (3) contact information contained in the address book; (4) digital media, including videos or photographs; and (5) any website addresses or links to the Internet and/or social media websites. Special Agent Tierney submitted an Affidavit in Support of Application for Search Warrant that (1) provided the facts setting forth Russian's arrest by state authorities on November 27, 2013; (2) identified the items found during the search of Russian's vehicle; (3) informed the court that the state court had issued a warrant for the search of Russian's residence and identified those items discovered during the search; and (4) informed the court that Russian was found guilty in 1986 in the United States District Court of receipt of a firearm by a person under felony indictment in violation of 18 U.S.C. § 922(h)(1).[5]

In March 2014, a federal grand jury returned a superseding indictment charging Russian with felon in possession of a firearm, possession of a firearm in furtherance of a drug trafficking

---

[5] Federal Court Search Warrant Application, Doc. 61-3, p. 3.

crime, and possession with the intent to distribute marijuana.[6] On August 18, 2014, Russian filed a Motion to Suppress Automobile Search asking the Court to suppress evidence seized from Officer Wilson's warrantless search of his vehicle. Russian also filed a second motion seeking to suppress all evidence seized during the search of his residence and third motion seeking to suppress evidence obtained from Officer Wilson's search of his cellular phones. On September 10, 2014, Russian filed an Amended Motion to Suppress Cellular Telephone Search asking the Court to suppress all evidence obtained from both Officer Wilson's and Special Agent Tierney's searches of his cell phones. The Court held a hearing on April 10, 2015, and the matter is now before the Court.

## II.     Analysis

### A.     Motion to Suppress Automobile Search

Russian challenges the search of his vehicle after he was taken into custody the night of November 27, 2013. Russian argues that any evidence seized from his vehicle should be suppressed because the police did not have a valid warrant to search the vehicle and no exceptions to the warrant requirement apply. The Government disagrees. It argues that the search was valid because Russian abandoned the vehicle when he ran from it, and thus, Russian no longer had a reasonable expectation of privacy in the vehicle.

The warrantless search of abandoned property does not violate the Fourth Amendment.[7] The Tenth Circuit has long held that "[w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had. Therefore, a warrantless search

---

[6] *See* 18 U.S.C. §§ 922(g), 924(c)(1); 21 U.S.C. § 841(a)(1).

[7] *Abel v. United States*, 362 U.S. 217, 241 (1960).

or seizure of abandoned property is not unreasonable under the Fourth Amendment."[8] The test for abandonment is "whether an individual has retained any reasonable expectation of privacy in the object."[9] "An expectation of privacy is a question of intent, which 'may be inferred from words spoken, acts done, and other objective facts.' "[10]

The Tenth Circuit has not addressed whether a suspect's flight from his vehicle as a result of being pursued by the police renders the vehicle "abandoned." However, those circuits that have addressed the issue have found that a person who flees from his vehicle in such circumstances abandons it.[11] In *United States v. Smith*,[12] the Eighth Circuit held that a defendant had abandoned his car when, after being stopped by the police, he fled from the car leaving the keys in the ignition and the motor running.[13] Similarly, in *United States v. Kirlew*,[14] the Fourth Circuit held that a defendant abandoned his vehicle when, after being pursued by police during a high-speed chase, the defendant jumped out of the still-moving car and fled on foot, leaving the

---

[8] *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983) (citations omitted).

[9] *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997) (citing *Jones*, 707 F.2d at 1172).

[10] *Jones*, 707 F.2d at 1172 (quoting *United States v. Kendall*, 655 F.2d 199, 202 (9th Cir. 1981)).

[11] *See United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011) (concluding that a defendant abandoned his car when he left it in a Walmart parking lot before fleeing on foot from the police); *United States v. Walton*, 538 F.2d 1348, 1351 (8th Cir. 1976) (holding that a defendant "had no standing to complain of [the warrantless] examination and search" of his car, where he left it parked on a public street with its doors unlocked and its windows down, as he fled from the police); *United States v. D'Avanzo*, 443 F.2d 1224, 1225-26 (2d Cir. 1971) (upholding a finding of abandonment where the defendant parked the car he was driving on a residential street and then fled from the police into a nearby wooded area); *United States v. Edwards*, 441 F.2d 749, 751 (5th Cir. 1971) (finding no Fourth Amendment protection where the defendant fled from the car on a public highway with the lights on and engine running).

[12] 648 F.3d 654 (8th Cir. 2011).

[13] *Id.* at 660.

[14] 291 F. App'x 536 (4th Cir. 2008).

car to drift down the road and come to a stop on its own.[15] The defendant in *Kirlew* argued that his actions did not qualify as abandonment because he intended to flee from the police, not to relinquish his rights in the vehicle.[16] But the Fourth Circuit disagreed finding that the fact that he vacated the car to avoid being captured by the police did not make his flight involuntary.[17] The Fourth Circuit also noted that "an individual's expectation of privacy in his automobile is less than in other property, particularly when the vehicle is left in the street or another public area." [18]

Here, Russian was involved in a police pursuit from Barton County, Missouri, to Crawford County, Kansas. At some point during the pursuit, Russian's car spun out of control and came to a stop. Three of the car's wheels were off the road, and the car was facing oncoming traffic. Russian exited the vehicle, leaving the headlights on and the driver's door open, and ran to a wooded area where he was later apprehended. Based on this evidence, the Court finds that Russian did not have a reasonable expectation of privacy in the vehicle, and thus, he abandoned it. Because Russian abandoned the vehicle, the police were not required to obtain a search warrant before searching it. Therefore, Russian's Motion to Suppress Automobile Search is denied.

**B.    Motion to Suppress Residential Search**

Russian challenges the search of his residence asserting that the state court search warrant lacked probable cause. The *Warrant Clause* of the Fourth Amendment provides that "no

---

[15] *Id*. at 538.

[16] *Id*.

[17] *Id*.

[18] *Id*.

Warrants shall issue, but upon probable cause, supported by Oath or affirmation."[19] A warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, thereby allowing the issuing magistrate to make an independent evaluation of the matter.[20] "When reviewing a determination of probable cause for a search warrant, the Court must consider the totality of the circumstances and determine whether the affidavit establishes a fair probability that contraband or evidence of a crime will be found in a particular place."[21] A magistrate's decision to issue a warrant is entitled to great deference.[22]

Russian contends that the only facts Officer Wilson offered in support of the warrant's application was a statement by the reported assault victim that Russian stored drugs and drug-related items in his residence. According to Russian, the reliability of the victim's tip was not enough to establish probable cause. The victim's tip, standing alone, may be a slender basis to establish probable cause. However, Officer Wilson's affidavit contained additional facts besides the victim's tip. It also described the police pursuit from Missouri to Kansas, Russian's attempt to flee from the police and subsequent arrest, the evidence found on Russian's person, and the evidence found in Russian's vehicle. Because the Court upholds the search of Russian's vehicle by Officer Wilson, this evidence, along with everything else in Officer Wilson's affidavit, corroborates the victim's tip that Russian kept drugs and other drug paraphernalia at his

---

[19] U.S. Const. amend. IV.

[20] *Id.*

[21] *United States v. Ellis*, 2012 WL 6115086, at *2 (D. Kan. Dec. 10, 2012) (citing *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009)).

[22] *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

residence. Therefore, the Court finds that there was sufficient probable cause to issue the search warrant for Russian's residence.[23]

Russian also argues that the search of his residence wasn't valid because the warrant incorrectly identified his street address. The search warrant identified the address as "503 E. Kansas," but Russian's correct address was 503 W. Kansas, St.[24] The Tenth Circuit has held that "[a] technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertan and identify the place to be searched."[25] The search warrant provides the following description of Russian's residence:

> The residence of 503 E. Kansas Apt. #2 Pittsburg Kansas 66762 within Crawford County described as a brown brick building with a porch on the north side. It will be the second residence west of College St. on the south side of the road. The building has two exterior doors one on the north side and one on the south side with a hall way in the middle. Apt. 2 is one of four apartments within this building and is located on the northwest corner of the building.[26]

This description describes the premises with sufficient particularity for the police to ascertan and identify the place to be searched. The warrant contains a detailed description of the physical building in which the Defendant's residence was located and states that Russian's residence was in the "second residence west of College St[reet] on the south side of the road."[27] Furthermore, Officer Wilson testified at the hearing that there is no East Kansas Street in Pittsburg, Kansas, and that West Kansas Street intersects College Street, the intersecting street identified in the

---

[23] In light of this finding, the Court declines to make an independent verification regarding the victim's reliability.

[24] State Court Search Warrant, Doc. 61-2, p. 1.

[25] *United States v. Brakeman*, 475 F.3d 1206, 1211 (10th Cir. 2007).

[26] State Court Search Warrant, Doc. 61-2, p. 1.

[27] State Court Search Warrant, Doc. 61-2, p. 1.

warrant.  Therefore, the Court finds that the misidentification of Russian's street address was not fatal to the execution of the warrant.

Finally, Russian takes issue with the time the search warrant was issued and the time set forth in Officer Wilson's factual affidavit stating when he and the other police officers began the search.  The warrant states that it was issued at 8:15 a.m., but the factual affidavit states that police began searching Russian's residence at 7:53 a.m.  Officer Wilson testified at the hearing, however, that he was part of the entry team for the search, that he personally received a signed copy of the search warrant before he entered the house, and that he did not see any other officers enter the residence before he had a copy of the warrant.  Therefore, the Court finds the time difference between the search warrant and Officer Wilson's factual affidavit to be a clerical error that does not affect the validity of the warrant or the search.  Russian's Motion to Suppress Residential Search is denied.

## C.     Amended Motion to Suppress Cellular Telephone Search

Russian seeks to suppress the evidence obtained from Officer Wilson's and Special Agent Tierney's searches of his cell phones.  Russian claims that the state court search warrant obtained by Officer Wilson and the federal court search warrant obtained by Special Agent Tierney were not supported by probable cause and did not describe with particularity the items to be searched and seized.

### 1.     Probable Cause

A finding of probable cause is to be determined from the "totality of the circumstances."[28]  "Probable cause to issue a search warrant exists only when the supporting

---

[28] *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).

affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place."[29] "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."[30]

With regard to the state court search warrant, Officer Wilson's affidavit set forth the following facts to establish the probable cause necessary for the search of Russian's cell phones: (1) Officer Wilson was involved in the pursuit of Russian's vehicle and his subsequent apprehension after Russian's car spun out of control and he fled on foot into a wooded area; (2) a search of Russian's person revealed a red and black Samsung cell phone as well as nineteen $10 bills and one $20 bill; (3) a search of Russian's vehicle revealed a ball of suspected marijuana, a black cell phone, nine baggies containing suspected marijuana, matches, rolling paper, and a broken glass smoking pipe with a white powdery residue; and (4) the person Russian allegedly threatened prior to the police pursuit informed Barton County deputies that Russian kept drugs and drug-related items at his residence. Officer Wilson's affidavit also stated that based on his training and experience, evidence of drug transactions can be frequently found in the cell phones of those distributing controlled substances, and that distributors of controlled substances frequently carry more than one phone. Based on these facts, the Court finds that there was probable cause for the state court to issue a warrant to search Russian's cell phones for evidence regarding the possession or distribution of controlled substances.

Special Agent Tierney's affidavit also contained sufficient facts for the magistrate judge to find probable cause and issue the federal court search warrant. Special Agent Tierney's

---

[29] *Id.*

[30] *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

affidavit also described Russian's arrest, the search of his vehicle, and the search of his residence. In addition, the affidavit stated that cell phones are frequently used to purchase and sell narcotics and firearms, that individuals have been known to keep pictures on their cell phones of firearms and narcotics in their possession, that data on the cell phones may include evidence as to contacts made, messages sent, and other evidence of criminal activity. Based on these facts, the Court finds that the federal court search warrant makes an adequate showing of probable cause.

### 2. Particularity

The Fourth Amendment requires not only that warrants be supported by probable cause, but that they "particularly describe[e] the place to be searched, and the persons or things to be seized."[31] The particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[32] The Tenth Circuit has set forth the following standard for determining when the Fourth Amendment's particularity requirement for things to be seized has been met:

> A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized. Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit. However, the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized.[33]

---

[31] U.S. Const. amend. IV.

[32] *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

[33] *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (citations and quotations omitted).

Neither the United States Supreme Court nor the Tenth Circuit has specifically addressed the particularity requirement in the context of obtaining a warrant for the search of a cell phone. But, in *Riley v. California*,[34] the Supreme Court addressed the issue of cell phones recovered during a search incident to a lawful arrest. In that decision, the Supreme Court stated: "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.' The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought."[35] The Supreme Court further described cell phones as "minicomputers that also happen to have the capacity to be used as a telephone."[36]

The Tenth Circuit has addressed the particularity requirement in the context of searching electronically stored information in a computer.[37] In this regard, the Tenth Circuit held that "warrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of material."[38] However, the Tenth Circuit has recognized the complexity and unpredictability involved in searching electronically stored information and does not require a search warrant to specify the manner in which the information must be searched.[39]

---

[34] 134 S. Ct. 2473 (2014).

[35] *Id*. at 2494-95.

[36] *Id*. at 2489.

[37] *See, e.g., United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999) (applying the particularity requirement to a warrant authorizing the search of computer files).

[38] *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) (quotations and emphasis omitted).

[39] *United States v. Brooks*, 427 F.3d 1246, 1251 ("This Court has never required warrants to contain a particularized computer search strategy.")

Instead, it has stated: "It is unrealistic to expect a warrant to prospectively restrict the scope of a search by directory, filename or extension or to attempt to structure search methods--that process must remain dynamic."[40]

Looking first at the federal court search warrant obtained by Special Agent Tierney, the Court finds that this warrant satisfies the Fourth Amendment's particularity requirement. The warrant sufficiently describes the items to be searched and the data to be seized from the phones. Specifically, it provides a physical description of each phone and sets forth their serial numbers. It also contains an itemized list of data to be seized from the phone, such as call logs, stored, incoming, and outgoing electronic communications, contact information within an address book, digital media, including videos or photographs, and website addresses or links to the Internet. Although Russian argues that the warrant fails to set forth an adequate search methodology, this is not fatal because the Tenth Circuit does not require search warrants to specifically set forth the manner in which electronically stored information is to be searched. Therefore, the Court concludes that the federal court search warrant "enables the searcher to reasonably ascertain and identify the things authorized to be seized" in accordance with the Tenth Circuit's particularity standard.[41]

Turning to the state court warrant, the Court cannot as easily conclude that it meets the Fourth Amendment's particularity requirement. The second paragraph of the warrant authorizes the seizure of cell phones, but this description seems very thin with respect to searching any data located within the cell phones. Officer Wilson's application for the search warrant, however, was much more specific. It listed the brand, model number, and color of the two cell phones and

---

[40] *United States v. Burgess*, 576 F.3d 1078, 1093 (10th Cir. 2009).

[41] *See Leary*, 846 F.2d at 600.


set forth the following list of data to be obtained from the cell phones: "text messages, phone numbers, phone calls sent and received, any data contained within the phone or on any removable media device within the phone, and [i]mages contributing to the possession or sale of any illegal drug and drug paraphernalia."[42]

Overall, the Court finds that it is a close call regarding whether the warrant and its application meet the particularity requirement. However, the Court upholds Officer Wilson's search of Russian's cell phones based on the good faith exception of *United States v. Leon*.[43] The good faith doctrine provides that "when police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause."[44] This doctrine protects "the exclusionary rule's purpose of deterring improper police action, rather than punishing errors made by magistrates."[45] Because "officers are generally not required to second-guess the magistrate's decision in granting a warrant, . . . evidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when the warrant is relied on by the officers in objective good faith."[46] "In answering this question, the court should consider all of the circumstances and assume that the executing officers have a 'reasonable knowledge of what the law prohibits.' "[47] There are four exceptions to reliance on the good faith doctrine: (1) where the judge issued the

---

[42] State Court Search Warrant Application, Doc. 61-1, p. 1.

[43] 468 U.S. 897 (1984).

[44] *United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003) (citing *Leon*, 468 U.S. at 913).

[45] *Gonzales*, 399 F.3d at 1229 (citing *Leon*, 468 U.S. at 916).

[46] *Id*. at 1228-29.

[47] *United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005) (quoting *Leon*, 468 U.S. at 919 n.20).

warrant on a deliberately or recklessly false affidavit; (2) where the judge abandoned his neutral and detached judicial role; (3) where the affidavit is so lacking in indicia of probable cause that it would be unreasonable for the officer to rely on it; and (4) where the warrant is so facially deficient and fails to particularize that an officer cannot reasonably believe it to be valid.[48]

Russian argues that the good faith exception is not applicable in this case because the warrant was devoid of probable cause and lacked particularity such that the officers could not determine the place to be searched or the items to be seized. During the hearing, Officer Wilson testified that based on the search warrant, he believed he was authorized to search the cell phones recovered from Russian on November 27, 2013—the night of Russian's arrest by state officials. There is no indication that Officer Wilson and the other officers involved were acting in bad faith in executing the search warrant issued by the judge. Furthermore, the Court has already found that the warrant was supported by probable cause, and the application for the search warrant specifically described the cell phones to be searched and provided a list of data that the officers intended to seize. Therefore, the Court does not find that suppressing the evidence would serve the purposes of the exclusionary rule in this case. Accordingly, the Court denies Russian's Amended Motion to Suppress Cellular Phone Search.[49]

**IT IS THEREFORE ORDERED** that Russian's Motion to Suppress Automobile Search (Doc. 37) is **DENIED**.

**IT IS ALSO ORDERED** that Russian's Motion to Suppress Cellular Telephone Search (Doc. 38) is **DENIED as MOOT**.

---

[48] *Leon*, 468 U.S. at 923.

[49] Russian also argues that the good faith exception to the exclusionary rule should not be applied to the federal court search warrant obtained by Special Agent Tierney. The Court declines to address this issue, as it has already found this warrant met the probable cause and particularity requirements of the Fourth Amendment.

**IT IS ALSO ORDERED** that Russian's Motion to Suppress Residential Search (Doc. 39) is **DENIED**.

**IT IS ALSO ORDERED** that Russian's Amended Motion to Suppress Cellular Telephone Search (Doc. 44) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 23rd day of April, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE